IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-01554-MSK-BNB

JOHN B. RAYE; and
GINA M. RAYE,

       Plaintiffs,

v.

PIONEER NATURAL RESOURCES COMPANY,

       Defendant.

_____

**OPINION AND ORDER GRANTING MOTION TO REMAND
AND DENYING MOTION FOR SANCTIONS**
_____

**THIS MATTER** comes before the Court pursuant to the Plaintiffs' Second Motion to Remand **(# 17)**, the Defendant's response **(# 23)**, and the Plaintiffs' reply **(# 25)**; and the Plaintiffs' Renewed Motion for Sanctions **(# 34)**, and the Defendant's response **(# 37)**.[1]

Although extensively litigated and complex in its particulars, the basic outline of this action can be simply stated. The Rayes are owners of a parcel of property known as the Aspen Rose Ranch. Pioneer claims to hold a lease to certain mineral resources, including minerals under the Aspen Rose Ranch. Pioneer attempted to enter onto the Rayes' property to exercise its lease to mine the minerals, and the Rayes objected.

On or about July 25, 2008, the Rayes commenced suit in the Colorado District Court in

---

[1] At the time this action was removed, cross-motions for summary judgment **(# 4, 5)** were pending in the state court. Because the Court remands this case, it does not reach these motions.

1

Las Animas County, asserting a single claim seeking to quiet title in the mineral rights to the Aspen Rose Ranch under C.R.C.P. 105. The crux of this claim, according to the initial Complaint, was that the mineral lease given by the prior owners of the Aspen Rose Ranch to Pioneer was re-assigned back to the Rayes (through an affiliated property owners' association) in or about 1996, and because the lease expired by its own terms in 1998.

On March 5, 2009, the Rayes filed what the parties appear to agree was an Amended Complaint.[2] *Docket # 1-152*. The Amended Complaint recited a somewhat more complicated set of facts. It acknowledged that on an unknown date, the U.S. Bureau of Land Management ("BLM") consolidated the Aspen Rose Ranch with other properties in the area as part of a consolidated mineral management unit, effectively giving the BLM oversight over mineral leases on the property.[3] *See generally* 30 U.S.C. § 226(m). The Amended Complaint apparently contends that the inclusion of the Ranch in the BLM unit was an oversight, and was done without notice to the Rayes. It states that the Rayes "have made demand upon [Pioneer] to correct [certain] filings with the BLM," relating to the Ranch, but that Pioneer has refused. The Amended Complaint asserts a new claim against Pioneer for "defamation of Plaintiff's surface

---

[2] The document in question is inexplicably entitled "Proposed Count II of Plaintiffs' Complaint." It lacks the traditional indicia of a complaint – *e.g.* statements of jurisdiction and venue, identification of the parties, etc. – and appears to intend to incorporate the terms of the existing Complaint by reference. Because the parties appear to treat the document as an Amended Complaint incorporating the previous quiet title claim alongside the allegations therein, the Court treats it as such as well.

[3] Although the original Complaint alleged that the leases expired by their own terms before the events at issue here, the Amended Complaint concedes that Pioneer renewed its expiring lease through the BLM. Thus, the authority of the BLM to continue the otherwise-expiring lease is a linchpin to Pioneer's claim that the lease remains current.

and mineral titles" in violation of both common law and C.R.S. § 38-35-109.[4]

Extensive proceedings ensued in the state court. In April 2009, Pioneer moved for partial summary judgment, seeking a ruling that the lease remains in force. Included in this motion was an extensive discussion of the process and justification for the BLM's creation of mineral exploration units. *Docket # 1-9*. On June 1, 2009, the Rayes filed a response to that motion, arguing, among other things, that "statutory and constitutional due process requirements for BLM to acquire jurisdiction over the Leases were not satisfied." *Docket # 1-17 at 4*. Construing this assertion as a claim arising under federal law, thus giving rise to federal question jurisdiction under 28 U.S.C. § 1331, Pioneer removed **(# 1)** the action to this Court on June 30, 2009. The Rayes, challenging the removal as untimely, now move **(# 17)** to remand the action.

28 U.S.C. § 1446 governs the procedure for removal of a case from state court. Among other things, a removal must be effected within 30 days of the date the case becomes removable. 28 U.S.C. § 1446(b). Where the removability of the case is not apparent from the initial pleading, removal must be accomplished within 30 days of "receipt, by the defendant . . . of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* As always, the party asserting federal jurisdiction, here Pioneer, bears the burden of proving that such jurisdiction exists. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

---

[4] C.R.S. § 38-35-109 provides a civil cause of action for those aggrieved by another's filing of false documents affecting the title to real property with a country clerk. This Court has located no Colorado authority for a claim of "defamation of title" but notes that Colorado recognizes a common-law claim for slander of title, where one records a false instrument relating to title, does so with malice, and causes special damages. *See Skyland Metropolitan Dist. v. Mountain West Enterprise, LLC*, 184 P.3d 106, 131 (Colo. App. 2007).

An action is removable pursuant to 28 U.S.C. § 1331 when one or more of its claims "arise[s] under the Constitution, laws, or treaties of the United States." Whether a claim "arises under" federal law is determined by examining the "well-pleaded complaint." *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986). Typically, a claim "arises under" federal law when it is the federal law itself that creates the cause of action. *Id.* However, in narrow instances, a state law claim "arises under" federal law when vindication of that state law right necessarily depends on the resolution of a substantial question of federal law. *Id.* at 808-09; *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006).

As noted, the touchstone of the removal analysis is the "well-pleaded complaint." In other words, it is "the plaintiff's statement of his own cause of action" that must "show that it is based on federal law." *Turgeau v. Administrative Review Board*, 446 F.3d 1052, 1060 (10th Cir. 2006). As "master of the claim," the plaintiff can artfully elect not to plead a federal claim in order to avoid removal, even though such a claim may be available to him. *Id.* However, a plaintiff may not defeat removal by failing to plead federal questions that are essential elements of the plaintiff's actual claim. *Id.* Here, the Rayes' Amended Complaint reveals two claims: (i) a quiet title claim premised upon the assertion that Pioneer's predecessor conveyed back the lease (or alternatively, that the lease expired by its terms), and (ii) claims for "defamation of title" under Colorado common and statutory law. On their faces, neither claim presents any apparent federal issue. The quiet title claim clearly turns on questions of state law questions governing contracts – whether the conveyance of the lease from Pioneer's predecessor to the Rayes' association was effective and whether the Pioneer lease did indeed expire according to its terms. The "defamation of title" claim involves questions of whether Pioneer's recording of

leases with the county clerk were false and injurious to the Rayes.

However, this Court finds that both claims, as pled by the Rayes' Amended Complaint, arose under federal law, thus triggering Pioneer's removal clock in March 2009. That result is evident in light of *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005). There, the plaintiff sought to quiet title to a parcel of real property that had been seized by the Internal Revenue Service for tax delinquency and sold to the defendant. The plaintiff claimed that the IRS failed to give adequate notice of the sale to the plaintiff, thus voiding its effect. Finding that the case was properly removed to federal court, the Supreme Court explained that the "arising under" question essentially asked "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. In that case, the Court noted that the grounds upon which the plaintiff claimed superior title was the failure of the IRS to give it adequate notice, and that consideration of whether the IRS complied with the notice requirements in a federal statute was an essential element of the quiet title claim.[5] *Id.* at 315. Moreover, the Court noted that the federal government possessed a strong interest in the outcome, as the IRS's ability to correctly and conclusively dispose of seized property implicated the Government's interest in "prompt and certain collection of delinquent taxes." *Id.*

An analogy can be drawn between *Grable* and the Rayes' quiet title (and to some extent, defamation of title) claim, as sharpened in the Amended Complaint. As initially pled in the

---

[5]The Court noted that "this conclusion puts us in venerable company, quiet title actions having been the subject of some of the earliest exercises of federal-question jurisdiction over state-law claims." *Id.* at 315.

original Complaint, the quiet title claim involved garden-variety questions of state contract law. However, the Amended Complaint describes a set of facts in which Pioneer's ability to claim rights in the lease derives from federal action (the establishment of the minerals unit by the BLM), just as the defendant in *Grable* claimed rights arising out of federal action (the sale by the IRS and the land-grant statutes). Similarly, the Rayes here allege the abuse of that federally-granted power, in that they received inadequate notice from the BLM of the Ranch's inclusion in the mineral unit.[6] This is similar to the set of facts in *Grable*, where the party seeking to quiet title alleged that its opponent's claim to title was affected by a federal agency's failure to give notice when purporting to acquire power over the property. If the propriety of the Internal Revenue Service's notice to Grable of the pending foreclosure sale was a significant federal issue in Grable's quiet title suit against the buyer of that property, the propriety of the BLM's notice to the Rayes of the inclusion of the Ranch in the mineral unit must be a significant federal issue in the Rayes' suit against Pioneer, who claims rights in the minerals by virtue of the BLM's actions.

The Court is not unsympathetic to Pioneer's suggestion that the existence of that federal issue is somewhat obscured by the indirect pleading of the Amended Complaint. Notably, the Amended Complaint does not explicitly assert any misconduct by the BLM itself, and implies only that Pioneer gave no notice "to [the Rayes'] Counsel" of certain events. One might be forgiven for reading an assertion concerning the failure to give notice "to Counsel" to be

[6]The Amended Complaint alleges that the Rayes demanded from Pioneer "any filings . . . before the BLM . . . affecting the lands of the Aspen Rose Ranch," but were given none. They allege that Pioneer filed papers to add the Ranch to the BLM unit without giving any notice to them, and that they requested that Pioneer "correct said filings with the BLM" to reflect that the Ranch was excluded from the minerals unit.

complaining of a discovery abuse or a lack of professional courtesy, rather than an explicit claim that BLM action was void for failure to give notice to the Rayes themselves (apparently through "Counsel" as their agent). But to the extent there was any doubt in Pioneer's mind as to the effect of the Rayes' pleading, that doubt should have been removed by the Rayes' assertion that filings by Pioneer concerning its leases should be "correct[ed] . . . with the BLM" to reflect that the Ranch "stand[s] free and clear of the . . . leases." The only logical reading one could give of this claim is that the Rayes were asserting that Pioneer somehow caused the BLM to erroneously include the Ranch in the mineral unit, thus tainting Pioneer's claim to a lease that required the BLM's imprimatur to have any effect.

Accordingly, the Court finds that a federal issue was apparent on the face of the Amended Complaint in March 2009, thus starting Pioneer's removal clock on that same date.[7]

---

[7] Arguably, one could follow an entirely different line of reasoning to reach the same result. If, as Pioneer argues, the Amended Complaint was insufficient to give clear notice that the Rayes were raising a federal issue concerning the sufficiency of the BLM's action, the Court could conclude that, to this day, the Rayes have failed to squarely raise any federal issue sufficient to support removal. The face of the Amended Complaint pleads two claims, both concerning Pioneer's rights to the minerals. Neither claim expressly purports to seek to undo the BLM's decision to include the Ranch in the mineral unit, and thus, if the federal claim does not arise by implication in the Amended Complaint, it has never arisen in this case. Therefore, there is no basis for Pioneer removing the case now.

The fact that the Rayes argue in their summary judgment response that the BLM's actions may have been unconstitutional is not, of itself, a "claim" sufficient to give rise to removal. Without an amendment of the pleadings to expressly assert a genuine claim to that effect, the Rayes have offered nothing more than an argument that the Court should not construe the facts a certain way, as doing so would appear to imply – but not actually find – that the BLM's action was unconstitutional. An argument that a party's position, taken to its logical end, would raise a constitutional concern about a particular action is not the equivalent of a claim directly asserting the unconstitutionality of that action. Thus, while one might reasonably argue that this action was removed too late or too early, the Court finds no merit in the argument that it was the Rayes' summary judgment response that raised, for the first time, a federal claim sufficient to support removal.

As a result, the 30 days in which to remove the action expired long before the July 2009 removal of this action. Thus, the Motion to Remand **(# 17)** is granted.

Separately, the Rayes have moved for sanctions **(# 34)** pursuant to Fed. R. Civ. P. 11, arguing that Pioneer's removal of this action was done in bad faith and for purposes of delay and vexation.[8] The Court has considered the Rayes' arguments and find them to be without merit. Although the Court has concluded that a federal issue existed on the face of the Amended Complaint, it does so only through a painstaking analysis of the ambiguous and indirect pleading contained in that document. Pioneer may have been incorrect in its assessment of when the federal issue was clearly presented, but that error was abetted by the imprecision with which the Rayes presented their claims. Accordingly, the Court cannot say, on this record, that Pioneer's decision to remove the action reflects bad faith, rather than a genuine struggle with the fuzzy contours on this case, which have gained clarity only through the evolution of the litigation.[9]

---

[8]Although the Court lacks jurisdiction over this action due to Pioneer's untimely removal, it possesses jurisdiction to decide collateral matters relating to the invocation of its jurisdiction, such as requests for sanctions. *see e.g. Willy v. Coastal Corp.,* 503 U.S. 131, 137-38 (1992).

[9]The Court would also deny sanctions on the ground that the Rayes have shown no particular prejudice resulting from the removal. The slight extension of summary judgment briefing is the only concrete delay the Rayes allege resulted from the change in forum, and it is hard to conceive how that single change affected the Rayes' rights. The Rayes do not allege, for example, that trial of the case or a ruling of significance was imminent at the time of, and thus frustrated by, the removal.

Accordingly, the Rayes' Motion to Remand **(# 17)** is **GRANTED**.  The Clerk of the Court shall transmit this case file to the Clerk of the Court for the Colorado District Court in Las Animas County, and, upon such transmission, shall close this case.  The Rayes' Motion for Sanctions **(# 34)** is **DENIED**.

Dated this 1st day of March, 2010

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge